**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE STATE STREET BANK AND TRUST CO. FIXED INCOME FUNDS INVESTMENT LITIGATION | : <br> : <br> :   Civil Action No. 08-md-1945 <br> : <br> : |
| F. W. WEBB COMPANY, et al. <br><br>         Plaintiffs, <br><br>      v. <br><br> STATE STREET BANK AND TRUST COMPANY, et al., <br><br>         Defendants. | : <br> : <br> : <br> : <br> :   Civil Action No. 09-cv-1241-RJH <br> : <br> : <br> : <br> : <br> : |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION**
**FOR RECONSIDERATION OF AUGUST 13, 2010 ORDER**
**AND FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ..............................................................................................................3

I.  PLAINTIFFS DO NOT MEET THE HIGH BAR FOR MOTIONS TO
    RECONSIDER A JUDGMENT .................................................................................3

    A.  Plaintiffs Provide No Basis For Reconsideration Of The Court's Dismissal
        Of The ERISA Claims Against State Street, As State Street Was Not An
        Investment Advice Fiduciary After April 2000 ...........................................5

        1.  State Street Had No Duty To Monitor CitiStreet's Alleged Extra-
            Contractual Provision Of Investment Advice After April 2000 ................5

        2.  State Street Did Not Provide Investment Advice Indirectly
            Through CitiStreet After April 2000.........................................................7

    B.  Plaintiffs Provide No Basis For Reconsideration Of The Court's Dismissal
        Of The ERISA Claims Against State Street As Directed Trustee .........................10

        1.  State Street Had No Duty To Correct Any Statements It Allegedly
            Made In 1996 .......................................................................................10

        2.  Plaintiffs Provide No Factual Basis For The Assertion That State
            Street "Knew Or Should Have Known" Of Alleged
            Misrepresentations By Cititstreet ...........................................................12

II.  PLAINTIFFS PROVIDE NO BASIS FOR RECONSIDERATION OF THE
     COURT'S DISMISSAL OF THE STATE LAW CLAIMS AGAINST STATE
     STREET ...............................................................................................................14

     A.  Plaintiffs' State Common Law And Chapter 93A Claims Against State
         Street Are Preempted By ERISA ...................................................................14

     B.  Plaintiffs Have Not Stated A Claim Against State Street Under The
         Massachusetts Uniform Securities Act ..........................................................16

III.  PLAINTIFFS' PROPOSED NEW FACTUAL ALLEGATIONS PROVIDE NO
      BASIS FOR GRANTING LEAVE TO AMEND BECAUSE AMENDMENT
      WOULD BE FUTILE..............................................................................................18

      A.  ERISA Does Not Permit Plaintiffs To Pursue Vicarious Liability Against
          A Principal For Breach Of An ERISA Fiduciary Duty By An Agent ..................19

      B.  Plaintiffs Insufficiently Plead In The PFAC That CitiStreet Was State
          Street's Agent............................................................................................21

      C.  Any Provision Of Investment Advice By CitiStreet Would Fall Outside
          The Scope Of Any Agency ..........................................................................22

CONCLUSION.........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Hyannis Harborview, Inc.*,
   838 F. Supp. 676 (D. Mass. 1993) ...................................................18

*Bank of Louisiana v. Aetna U.S. Healthcare Inc.*,
   468 F.3d 237 (5th Cir. 2006) ...........................................................16

*Chill v. Gen. Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996)..............................................................18

*Coan v. Kaufman*,
   457 F.3d 250 (2d Cir. 2006)..............................................................13

*Cornwell v. Credit Suisse Group*,
   No. 08 Civ. 3758(VM), 2010 WL 3069597 (S.D.N.Y. Aug. 11, 2010) ...................................4

*Daniels v. Nat'l Emp. Benefit Servs.*,
   858 F. Supp. 684 (N.D. Ohio 1994)...................................................9

*Darcangelo v. Verizon Commc'ns, Inc.*,
   292 F.3d 181 (4th Cir. 2002) ......................................................15, 16

*Davey v. Dolan*,
   496 F. Supp. 2d 387 (S.D.N.Y. 2007)..........................................3, 5, 7, 8

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
   974 F.2d 270 (2d Cir. 1992)........................................................12, 13

*DiFelice v. U.S. Airways, Inc.*,
   397 F. Supp. 2d 758 (E.D. Va. 2005) ...............................................20

*Donovan v. Cunningham*,
   716 F.2d 1455 (5th Cir. 1983) ........................................................13

*EMI Entm't World, Inc. v. Karen Records, Inc.*,
   681 F. Supp. 2d 470 (S.D.N.Y. 2010).......................................3, 8, 12, 17

*Freund v. Marshall and Ilsley Bank*,
   485 F. Supp. 629 (W.D. Wis. 1979) .................................................7

*Gerosa v. Savasta & Co.*,
   329 F.3d 317 (2d Cir. 2003)............................................................13

*Goldenberg v. Indel, Inc.*,
No. 09-cv-5202, 2010 WL 3732974 (D.N.J. Sept. 17, 2010)....................................................8

*Haddock v. Nationwide Fin. Servs., Inc.*
570 F. Supp. 2d 355 (D. Conn. 2008)......................................................................................13

*Harris v. Finch, Pruyn & Co., Inc.*,
No. 1:05-CV-951, 2008 WL 2064972 (N.D.N.Y. May 13, 2008) .........................................20

*In re AOL Time Warner*,
No. MDL 1500, 02 Civ. 8853, 2005 WL 563166 (March 10, 2005)......................................20

*In re Bank of Am. Corp. Litig.*,
No. 09 MD 2058, 2010 WL 3448197 (S.D.N.Y. Aug. 27, 2010)............................................20

*In re Britannia Bulk Holdings Inc. Sec. Litig*,
665 F. Supp. 2d. 404 (S.D.N.Y. 2009)................................................................................17, 18

*In re Evergreen Mut. Funds Fee Litig.*,
240 F.R.D. 115 (S.D.N.Y. 2007) ...............................................................................................3

*In re Lehman Bros. Sec. and ERISA Litig.*,
683 F. Supp. 2d 294 (S.D.N.Y 2010).........................................................................................6

*In re Morgan Stanley ERISA Litig.*,
696 F. Supp. 2d. 345 (S.D.N.Y. 2009).....................................................................................20

*In re Parmalat Sec. Litig.*,
640 F. Supp. 2d 243 (S.D.N.Y. 2009).......................................................................................22

*In re Pfizer Inc. ERISA Litig.*,
No. 04 Civ. 10071, 2009 WL 749545 (S.D.N.Y. March 20, 2009)........................................13

*In re Rezulin Prods. Liab. Litig.*,
392 F. Supp. 2d 597 (S.D.N.Y. 2005).......................................................................................21

*In re Rezulin Prods. Liab. Litig.*,
224 F.R.D. 346 (S.D.N.Y. 2004) ...........................................................................................3, 4

*Invest Almaz v. Temple-Inland Forest Prods. Corp.*,
243 F.3d 57 (1st Cir. 2001).......................................................................................................13

*Kling v. Fidelity Mgmt. Trust Co.*,
323 F. Supp. 2d 132 (D. Mass. 2004) .......................................................................................11

*Jackson Truck Drivers Union Local 42 Health and Welfare Fund*,,
933 F. Supp. 1124 (D. Mass. 1996) ...........................................................................................6

*Lee v. Burkhart*,
  991 F.2d 1004 (2d Cir. 1993) ......................................................................13

*Lowen v. Tower Asset Mgmt.*,
  829 F.2d 1209 (2d Cir. 1987) ........................................................................9

*Lucente v. Int'l Bus. Machs. Corp.*,
  310 F.3d 243 (2d Cir. 2002) .........................................................2, 19, 21, 23

*Marram v. Kobrick Offshore Fund, Ltd.*,
  809 N.E.2d 1017 (Mass. 2004) ....................................................................17

*Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*,
  476 F. Supp. 2d 414 (S.D.N.Y. 2007) ..........................................................22

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ......................................................................................7

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*,
  399 F.3d 692 (6th Cir. 2005) ...................................................................15, 16

*Pension Benefit Guar. Corp. v. Greene*,
  570 F. Supp. 1483 (W.D. Pa. 1983) ...............................................................7

*Reich v. Lancaster*,
  843 F. Supp. 194 (N.D. Tex. 1993) ................................................................9

*Ruston v. Town Bd. for Town of Skaneateles*,
  610 F.3d 55 (2d Cir. 2010) ...........................................................................14

*Sogeti, U.S.A., LLC v. Whirlwind Bldg. Sys., Inc.*,
  496 F. Supp. 2d 380 (S.D.N.Y. 2007) ............................................................3

*Stutts v. De Dietrich Group*,
  No. 03-CV-4058, 2006 WL 1867060 (E.D.N.Y. June 30, 2006) .................13

*Theos & Sons v Mack Trucks, Inc.*,
  729 N.E.2d 1113 (Mass. 2000) ....................................................................22

## STATUTES

15 U.S.C. § 80a-7(a) ...........................................................................................21

15 U.S.C. § 80a-12(d) .........................................................................................21

15 U.S.C. § 80a-17 ..............................................................................................22

29 U.S.C. § 1105(a) ...................................................................................................12, 13

M.G.L. c. 110A, §410 (a)(2) ......................................................................................16, 17


**OTHER AUTHORITIES**

29 C.F.R. § 2510.3-21(c) ......................................................................................5, 8, 9, 10

Fed. R. Civ. P. 59(e) ..........................................................................................................3

Fed. R. Civ. P. 15 ...........................................................................................................18

S.D.N.Y. Local Civil Rule 6.3 ....................................................................................1, 3, 4

Restatement (Third) of Agency § 1.01 .............................................................................21

Restatement (Third) of Agency § 2.03 .............................................................................22

Restatement (Third) of Agency § 7.07 .............................................................................22

Restatement (Third) of Agency § 7.08 .............................................................................22

Defendants State Street Bank and Trust Company and State Street Global Advisors (collectively, "State Street") respectfully submit this memorandum in opposition to Plaintiffs' motion for reconsideration and for leave to file an amended complaint ("Motion for Reconsideration" or "Motion").

## PRELIMINARY STATEMENT

In its August 12, 2010 Opinion (the "Opinion"), the Court dismissed Plaintiffs' claims against State Street and held that Plaintiffs' only viable claim related to post-April 2000 extra-contractual advisory services allegedly provided by defendant CitiStreet LLC ("CitiStreet"). Plaintiffs make no real attempt to satisfy the strict standards of Local Rule 6.3, which require Plaintiffs to "set[] forth concisely the matters or controlling decisions which counsel believes the court has overlooked."  Instead, Plaintiffs' Motion presents a litany of new and recycled legal arguments that are simply variations on an old theme from Plaintiffs' prior filings – that State Street is liable for misstatements or omissions CitiStreet allegedly made while providing extra-contractual investment advice to F.W. Webb Company ("F.W. Webb") regarding the SSgA Yield Plus Fund (the "YPF").[1]  All of these arguments, whether framed in terms of affiliate, agency, directed trustee, or co-fiduciary liability, were either already rejected by the Court or are new arguments not previously advanced that are inappropriate to raise in a motion for reconsideration.

Plaintiffs' reliance on supposedly "newly-available" evidence as a basis for reconsideration likewise fails.  The only "new" evidence Plaintiffs present consists of (i) a December 8, 1999 letter sent on behalf of CitiStreet to Plaintiffs (the "CitiStreet Letter"); and (ii) an April 2000 Client Services Agreement (the "CSA") between CitiStreet and State Street. As an initial matter, neither document is "newly-available."  The CitiStreet Letter comes from

---

[1] The SSgA Yield Plus Fund is one of a series of SSgA Funds, an open-end investment company

Plaintiffs' own records from more than a decade ago, and Plaintiffs concede that they presented the CSA to the Court during their April 26, 2010 argument on State Street's motion to dismiss.  Pls.' Mem. at 5.  But not until the Court dismissed Plaintiffs' claims against State Street did Plaintiffs seek to amend their Complaint to include this "new" evidence.  In any event, Plaintiffs' "new" evidence fails to support their contention that State Street is somehow liable for extra-contractual investment advice CitiStreet allegedly provided after April 2000.  To the contrary, the CSA confirms that CitiStreet was engaged as an independent contractor to provide only those limited services identified in the Administrative Services Agreement (the "ASA") between State Street and F.W. Webb, which, as the Court previously held, did not include the provision of investment advice.  Op. at 25.  Justice does not require that Plaintiffs be given another bite at the apple in order to present such inconsequential evidence.

Moreover, Plaintiffs' attempt to amend the Complaint should be denied as futile, as the Proposed First Amended Complaint ("PFAC") merely recycles allegations and claims already rejected by the Court.  In its Opinion, the Court rejected Plaintiffs' breach of fiduciary duty theories in dismissing all claims against State Street, holding that Plaintiffs (i) failed to allege that State Street made any misrepresentations to F.W. Webb; and (ii) failed to allege that State Street provided any investment advisory or administrative services to F.W. Webb at all after April 2000.  The Court's analysis applies with equal force to the PFAC, which fails to state a cognizable misrepresentation or omission claim for the same reasons as its predecessor.  Because amendment would be futile, there is no basis to grant leave to amend.  *See Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Accordingly, Plaintiffs' motions should be denied, and the judgment should remain undisturbed.

## ARGUMENT

## I.    PLAINTIFFS DO NOT MEET THE HIGH BAR FOR MOTIONS TO RECONSIDER A JUDGMENT

Motions for reconsideration under Local Civil Rule 6.3 are governed by the same strict

standard as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). *In re Evergreen*

*Mut. Funds Fee Litig.*, 240 F.R.D. 115, 117 (S.D.N.Y. 2007). "Reconsideration of a court's

previous order 'is an extraordinary remedy to be employed sparingly in the interests of finality

and conservation of scarce judicial resources.'" *EMI Entm't World, Inc. v. Karen Records, Inc.*,

681 F. Supp. 2d 470, 471 (S.D.N.Y. 2010) (Holwell, J.) (quoting *USA Certified Merchs. LLC v.*

*Koebel*, 273 F. Supp. 2d 501, 503 (S.D.N.Y. 2003)). Accordingly, "[m]otions for

reconsideration are denied unless '[the previous decision] was based on a mistake of fact or clear

error of law, or . . . refusal to revisit the earlier decision would work a manifest injustice.'"

*Sogeti, U.S.A., LLC v. Whirlwind Bldg. Sys., Inc.*, 496 F. Supp. 2d 380, 381 (S.D.N.Y. 2007)

(Holwell, J.) (second and third alterations in original) (quoting *LiButti v. United States*, 178 F.3d

114, 118 (2d Cir. 1999)). To succeed, "the movant must demonstrate that the Court overlooked

controlling decisions or factual matters that were put before it on the underlying motion." *EMI*

*Entm't*, 681 F. Supp. 2d at 471 (internal quotation marks omitted). Therefore, a party "may not

advance new facts, issues or arguments not previously presented to the court." *Davey v. Dolan*,

496 F. Supp. 2d 387, 389 (S.D.N.Y. 2007) (Holwell, J.) (internal quotation marks omitted), *aff'd*,

06-4910-cv, 2008 WL 4187968 (2d Cir. 2008); *see also In re Rezulin Prods. Liab. Litig.*,

224 F.R.D. 346, 349 (S.D.N.Y. 2004) (stating that "[m]otions for reconsideration are intended to

bring to the Court's attention matters that it overlooked, not to examin[e] a decision and then

plug[] the gaps of a lost motion with additional matters." (second and third alterations in

original) (quoting *Questrom v. Federated Dep't Stores, Inc.*, 192 F.R.D. 128, 130-31 (S.D.N.Y.

2000) (internal quotation marks omitted)).  Courts have also held that "newly discovered" evidence can warrant reconsideration in certain circumstances.  New evidence only warrants reconsideration where its proponent shows that "(1) the proffered evidence was unavailable despite the exercise of due diligence by the movant in procuring evidentiary support, and (2) manifest injustice will result if the court opts not to reconsider its earlier decision."  *In re Rezulin*, 224 F.R.D. at 350.

Plaintiffs cannot satisfy these stringent standards for reconsideration.  Their arguments are either presented for the first time here or assert that the Court simply "got it wrong" – neither of which is an appropriate basis under Local Rule 6.3.  *See Cornwell v. Credit Suisse Group*, No. 08 Civ. 3758(VM), 2010 WL 3069597, at *7 (S.D.N.Y. Aug. 11, 2010) ("A court must narrowly construe and strictly apply Rule 6.3 so as to . . . prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment.").  Similarly, because Plaintiffs fail to "demonstrate that the newly discovered evidence was [not] in [their] possession" at the time the judgment was entered, that evidence provides no basis to reconsider the Opinion.  *In re Rezulin*, 224 F.R.D. at 350 (quoting *Tri-Star Pictures, Inc. v. Columbia Pictures Prods.*, 88 Civ. 9127(DNE), 1992 WL 296314, at *3 (S.D.N.Y. Oct. 6, 1992)) (internal quotation marks omitted).  Regardless, Plaintiffs' "new" evidence fails to support their argument that State Street is in some way liable for CitiStreet's alleged extra-contractual provision of investment advice to F.W. Webb.  Accordingly, no "manifest injustice" will result from the Court's denial of Plaintiffs' Motion, and the Court's ruling should stand.

- 4 -

**A.    Plaintiffs Provide No Basis For Reconsideration Of The Court's Dismissal Of The ERISA Claims Against State Street, As State Street Was Not An Investment Advice Fiduciary After April 2000**

In dismissing Plaintiffs' ERISA claims against State Street, the Court held that Plaintiffs failed to allege that State Street provided Plaintiffs with any investment advice after April 2000. Op. at 24.  Plaintiffs disagree and argue that reconsideration is appropriate because the Court "overlook[ed] applicable law and key allegations made in the Complaint," and in "light of newly-available evidence."  Pls.' Mem. at 1.  Plaintiffs claim that they "plausibly alleged that State Street continued to serve as an investment advice fiduciary after April 2000" and breached its duties under ERISA by (1) "delegating its duties to its affiliate CitiStreet" under the CSA and subsequently failing to "monitor" CitiStreet; and (2) "by providing investment advice directly or indirectly through its affiliate CitiStreet within the meaning of 29 C.F.R. § 2510.3-21(c)(ii)." Pls.' Mem. at 1, 3.  Each of these arguments is flawed, and neither provides any basis for the Court to disturb its dismissal of Plaintiffs' ERISA claims against State Street.

**1.    State Street Had No Duty To Monitor CitiStreet's Alleged Extra-Contractual Provision Of Investment Advice After April 2000**

Plaintiffs assert that State Street is liable for CitiStreet's allegedly deficient post-April 2000 provision of investment advice because "by delegating its fiduciary functions to [CitiStreet], State Street remained responsible under ERISA for monitoring [CitiStreet's] performance."  Pls.' Mem. at 7.  This is a new argument, as Plaintiffs made no direct reference to State Street's alleged duty to monitor in their previous motion briefing or in the Complaint.  This is a procedurally improper basis for reconsideration, and the argument should be rejected for this reason alone.  *See Davey*, 496 F. Supp. 2d at 389 (plaintiffs "may not advance new facts, issues or arguments not previously presented to the court" (internal quotation marks omitted)).

In any event, Plaintiffs' argument also fails on the merits.  Given that CitiStreet allegedly assumed its investment advisor fiduciary status not through a formal delegation, but by *functionally* assuming the role, Plaintiffs' argument regarding State Street's supposed monitoring duty is untenable as a matter of law.  Op. at 21.  Plaintiffs cite no authority to support the novel proposition that an administrative fiduciary is bound to monitor a delegee's performance of extra-contractual fiduciary duties that the delegee assumes *outside* the scope of the delegation.  To the contrary, a delegating fiduciary can only be liable for breaches of the precise duties it delegates.  *See Jackson Truck Drivers Union Local 42 Health and Welfare Fund*, 933 F. Supp. 1124, 1140 (D. Mass. 1996) ("A fiduciary who attempts to delegate a duty to another person or entity may nonetheless be liable for the breach of *that duty*[.]") (bracketed alteration in original) (emphasis added) (internal quotation marks omitted); *see also In re Lehman Bros. Sec. and ERISA Litig.*, 683 F. Supp. 2d 294, 299 (S.D.N.Y. 2010) (a fiduciary "by virtue of the exercise of control and authority over a plan" is subject to liability "only 'to the  extent' [that] they have or have exercised such power").

Plaintiffs allege no facts that plausibly suggest State Street delegated an advisory function to CitiStreet.  Instead, as the Court recognized, CitiStreet's duty to provide prudent investment advice arose, if at all, "from the course of [CitiStreet's] relationship with plaintiffs."  Op. at 25.  Plaintiffs cite three documents as the source of State Street's alleged delegation:  the ASA, the CitiStreet Letter, and the CSA.  Pls.' Mem. at 4-6.  But none of these documents supports Plaintiffs' argument.  As the Court observed previously, the ASA says nothing about investment advice.  Op. at 25.  Nor does the Citistreet Letter.  As for the CSA, which Plaintiffs claim "sets forth [CitiStreet's and State Street's] respective duties starting in April 2000," Pls.' Mem. at 4, it contains nothing to support Plaintiffs' bald assertion that State Street delegated investment

advisory duties to CitiStreet.  Moreover, the CSA defines the scope of CitiStreet's duties to F.W.

Webb simply by reference to the ASA.  Although Plaintiffs make a cryptic reference to "other

circumstances of the April 2000 introduction of F.W. Webb to CitiStreet," Pls.' Mem. at 5, as an

additional source of State Street's alleged duty to monitor, Plaintiffs nowhere describe these

"circumstances" and do not argue that State Street's purported monitoring duty arose

functionally.  Thus, Plaintiffs have alleged nothing to explain how State Street's supposed duty

to monitor CitiStreet's alleged extra-contractual provision of investment advice arose.  Plaintiffs'

delegation and duty to monitor argument provides no basis for reconsideration of the Court's

dismissal of Plaintiffs' ERISA claims against State Street.[2]

### 2.    State Street Did Not Provide Investment Advice Indirectly Through CitiStreet After April 2000

Plaintiffs next argue that the Court failed to address its allegations and argument that

State Street rendered investment advice to F.W. Webb after April 2000 "directly or indirectly

through or together with CitiStreet, within the meaning of" the Department of Labor regulation

---

[2] Plaintiffs also raise a related new argument – that State Street remained responsible for allegedly imprudent investment advice because it "never indicated to F.W. Webb that it was ceasing any of its fiduciary or administrative functions." Pls.' Mem. at 8.  This new argument is also procedurally inappropriate.  *See Davey*, 496 F. Supp. 2d at 389.  Regardless, CitiStreet's alleged functional fiduciary status is similarly dispositive of this argument.  As they do elsewhere, Plaintiffs here conflate principles applicable to *named* as opposed to *functional* fiduciaries.  As the cases cited by Plaintiffs illustrate, the issue of formal fiduciary resignation arises, if at all, in the context of a named fiduciary who ceases performing services, but nonetheless retains fiduciary status by failing to provide adequate notice of resignation under the plan documents.  *See, e.g.*, *Pension Benefit Guar. Corp. v. Greene*, 570 F. Supp. 1483 , 1497 (W.D. Pa. 1983), *aff'd mem.*, 727 F.2d 1100 (3d. Cir. 1984); *Freund v. Marshall and Ilsley Bank*, 485 F. Supp. 629, 635-36 (W.D. Wis. 1979).  But this concept is inapplicable to an alleged *functional* fiduciary.  By statutory definition, a party may be deemed an ERISA functional fiduciary "only 'to the extent' that he acts in such a capacity in relation to the plan." *Pegram v. Herdrich*, 530 U.S. 211, 225-226 (2000) (quoting 29 U.S.C. § 1002(21)(A)).  As such, "the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*." *Id*. at 226 (emphasis added). Consequently, because State Street's purported advisory fiduciary status arose functionally (if at all), it ceased at the latest in April of 2000.

29 C.F.R. § 2510.3-21(c)(1)(ii).  Pls.' Mem. at 10.  Plaintiffs claim they previously presented this "affiliate" argument to the Court, but nowhere in Plaintiffs' Complaint or in its Opposition to State Street's Motion to Dismiss did Plaintiffs cite to § 2510.3-21(c)(1)(ii) or the primary cases they now rely upon in making this argument.  Thus, it is inappropriate for Plaintiffs to raise this new argument on a motion for reconsideration.  *See Davey*, 496 F. Supp. 2d at 389; *EMI Entm't*, 681 F. Supp. 2d at 471.

In any event, Plaintiffs' "affiliate" argument also fails on the merits.  Plaintiffs argue that § 2510.3-21(c)(1)(ii) allows State Street to be held liable for providing investment advice "through" its "affiliate" CitiStreet without any need to "allege or prove any agency or alter ego relationship between State Street and CitiStreet."  Pls.' Mem. at 10.  But one of the few courts to consider Plaintiffs' facile reading of the "affiliate" language in § 2510.3-21(c)(1)(ii) recently rejected it out of hand.  In *Goldenberg v. Indel, Inc.*, No. 09-cv-5202, 2010 WL 3732974 (D.N.J. Sept. 17, 2010), the court held that simply because two parties may be "affiliated" does not mean that one party's investment advisor fiduciary status can be imputed to the other under § 2510.3-21(c)(1)(ii).  The court explained that "counter to Plaintiffs' assertion, [a defendant] is not made a fiduciary merely by being an 'affiliate' of [a 'rendering investment advice' fiduciary]."  *Id.* at *6.  Instead, to be held liable through an affiliate, a defendant "would still have to independently 'render[ ] advice to the plan as to the value of securities or other property, or make[ ] recommendation[s] as to the advisability of investing in, purchasing, or selling securities or other property.'"  *Id.* (alterations in original) (quoting 29 C.F.R. § 2510.3-21(c)(1) (2010)).  In contrast, Plaintiffs here argue that from 2000 onward, State Street was an investment advice fiduciary by virtue of its relationship with CitiStreet, not because of any actual advice State Street rendered during that time.

Significantly, none of the cases cited by Plaintiffs supports their expansive interpretation of affiliate liability under § 2510.3-21(c)(1)(ii).  In fact, the cases relied upon by Plaintiffs establish just the opposite:  courts require significantly more than an affiliate or parent-subsidiary relationship before imputing one entity's investment advice fiduciary status to another.  *See, e.g.* *Lowen v. Tower Asset Mgmt.*, 829 F.2d 1209, 1221 (2d Cir. 1987) (imputing fiduciary status where the record reflected "extensive intermixing of assets among the corporations . . . without observing the appropriate formalities . . . and wholly inadequate capitalization of the corporations in light of the nature of the businesses in which they were engaged"); *Daniels v. Nat'l Emp. Benefit Servs.*, 858 F. Supp. 684, 692 (N.D. Ohio 1994) (imputing fiduciary status where an individual defendant was the owner and in fact the "only individual authorized to act" on behalf of two corporate entities with the same address and phone number); *Reich v. Lancaster*, 843 F. Supp. 194, 197-98 (N.D. Tex. 1993) (imputing fiduciary status where an individual defendant was the owner and chairman of one corporation, which wholly owned a subsidiary corporation, and which both "shared the same office, shared employees, had the same telephone numbers, and were run by [the defendant] and his sons").

Plaintiffs do not and cannot assert that the relationship between CitiStreet and State Street resembles the corporate veil-piercing scenarios at issue in these cited cases, such as a failure to follow corporate formalities or maintain adequate capital.  Indeed, as Plaintiffs acknowledge, CitiStreet was not a subsidiary of State Street, but was instead a "joint venture" between State Street and CitiGroup.  Pls.' Mem. at 3.  And Plaintiffs' assertion that certain of the same "people, managers, and assets" previously at State Street moved to CitiStreet is of no moment because this merely evidences a transition of the business from State Street to CitiStreet – not, as

Plaintiffs suggest, that State Street was going to provide the same services to F.W. Webb after April 2000 and "route[] [these services] through its affiliate CitiStreet."  Pls.' Mem. at 10.

Accordingly, Plaintiffs' "affiliate" argument provides no basis for the Court to reconsider its dismissal of the ERISA claims against State Street.  State Street did not provide investment advice to F.W. Webb after April 2000 indirectly through CitiStreet within the meaning of § 2510.3-21(c)(1)(ii).

**B.      Plaintiffs Provide No Basis For Reconsideration Of The Court's Dismissal Of The ERISA Claims Against State Street As Directed Trustee**

Plaintiffs also unsuccessfully argue for reconsideration based on State Street's alleged "other post-April 2000 breaches of duties under ERISA," Pls.' Mem at 11, apart from any as a purported investment advice fiduciary.  These arguments are impermissible second bites at the apple, and are also meritless, and should thus be rejected.

**1.      State Street Had No Duty To Correct Any Statements It Allegedly Made In 1996**

Plaintiffs argue that State Street breached its fiduciary duties as a directed trustee after 2000 because "State Street knew or should have known that the instruction to keep the YPF on the menu was based on a state of misunderstanding that it had caused but not corrected."  Pls.' Mem. at 13.  The Court squarely rejected this argument in its Opinion, noting that "the duties of an ERISA fiduciary extend only as far as its fiduciary functions."  Op. at 27.  Because the Complaint did not sufficiently allege that State Street had "executed any investment instruction imprudently or in violation of ERISA or the Plan," the Court held that Plaintiffs' claim that State Street breached its duties as a directed trustee failed as a matter of law.  *Id*. at 28.  Because Plaintiffs make no attempt to identify any mistake of fact or clear error of law by the Court in reaching its decision, this argument must fail once again.

In their Motion, Plaintiffs cite just one case in support of the contention that State Street "retained its fiduciary duty as directed trustee not to act on instructions, which it knew or should have known, were the product of a misunderstanding that it had caused."  Pls.' Mem. at 14 (citing *Kling v. Fidelity Mgmt. Trust Co.*, 323 F. Supp. 2d 132 (D. Mass. 2004)).  This case is not "controlling law," and its holding does not present a legal theory that the court "overlooked" in its earlier Opinion.  Instead, *Kling* merely finds that a directed trustee may be liable for breach of fiduciary duty if it "followed orders contrary to ERISA or the Plan."  *Kling*, 323 F. Supp. 2d at 150.  Rather than "overlook" this principle, the Court's Opinion stated that a directed trustee's duty to "inquire into any investment instruction that it knew or should have known was imprudent, contrary to ERISA, or contrary to the terms of the plan . . . . is quite constricted," Op. at 26, and that the Complaint did not sufficiently allege that State Street violated this duty.[3]  *See id*. at 27 (finding that the Complaint failed to allege that State Street "kn[ew] anything about the YPF that would have shown the decision to keep the fund on the investment menu to be imprudent" or that "rendered the YPF an imprudent investment under the principles set forth in *WorldCom*"); *see also id*. (rejecting "Plaintiffs' real argument" that "because State Street continued to serve as directed trustee after April 2000, it also should have continued to provide plaintiffs with updates about their investments").  Plaintiffs' attempt to recycle this unsuccessful argument does not merit reconsideration of the Court's Opinion.

---

[3] Tellingly, the PFAC does nothing to remedy the deficiencies identified by the Court, nor does the Motion argue that it does.  *Compare* Compl. ¶¶ 86-89 *with* PFAC ¶¶ 101-104 (repeating virtually the same conclusory allegations that State Street knew or should have known that the Yield Plus Fund was an imprudent investment).

**2.** **Plaintiffs Provide No Factual Basis For The Assertion That State Street "Knew Or Should Have Known" Of Alleged Misrepresentations By Citistreet**

Plaintiffs next reargue that State Street breached its duties as a co-fiduciary because it "knew or should have known" that CitiStreet was allegedly breaching its fiduciary duties. *See, e.g.*, Pls. Mem. at 15; PFAC ¶ 106.   The Court has already ruled, in no uncertain terms, that "there is no basis for co-fiduciary liability" with regard to State Street.  Op. at 27.  Because this issue has already been fully briefed and ruled upon, Plaintiffs' attempt to re-argue it in its Motion for Reconsideration is improper.  *See, e.g., EMI Entm't*, 681 F. Supp. 2d at 471 (stating that a motion for reconsideration "is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved" (internal quotation marks omitted)).  Although Plaintiffs do not articulate a basis for reconsideration of their co-fiduciary liability argument, they suggest that the Court committed a clear error of law by overlooking *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270 (2d Cir. 1992), which Plaintiffs claim sets forth a constructive knowledge requirement under 29 U.S.C. § 1105(a)(1) and (3).[4] Pls.' Mem at 14.  Setting aside the fact that Plaintiffs themselves failed to cite *Diduck* at any point previously, Plaintiffs are incorrect about its holding.

The *Diduck* constructive knowledge standard is not controlling law on the question of co-fiduciary liability under ERISA because *Diduck* did not address that issue or even cite § 1105.

---

[4] Plaintiffs also assert that State Street is liable as a co-fiduciary under § 1105(a)(2) by "enabling CitiStreet's breach of fiduciary duties," Pls.' Mem at 15, but offer no basis for raising this issue in a motion for reconsideration, particularly in light of the Court's ruling that there was no basis for co-fiduciary liability against State Street, Op. at 27.  In support of their argument for co-fiduciary liability under § 1105(a)(2), Plaintiffs simply re-hash arguments asserted elsewhere that (1) State Street failed to monitor CitiStreet's alleged investment advice, Pls.' Mem at 15, (addressed in Section I.A.1., *supra*); and (2) that State Street is liable as a co-fiduciary simply by executing F.W. Webb's investment instructions, *id.*, (an argument already considered and rejected by the Court, Op. at 27-28).

*See, e.g.*, *Lee v. Burkhart*, 991 F.2d 1004, 1010-11 (2d Cir. 1993) (distinguishing between "the standard of ERISA Section 1105(a)(3) for fiduciaries and the standard set out in *Diduck* for non-fiduciaries"); *In re Pfizer Inc. ERISA Litig.*, No. 04 Civ. 10071, 2009 WL 749545, at *14 (S.D.N.Y. March 20, 2009) (explaining that the knowledge element set forth in § 1105(a)(1) and (a)(3) governing co-fiduciary liability requires "actual knowledge").[5]  The applicable ERISA co-fiduciary liability is set out by Congress in § 1105(a)(1) and (3), and requires "knowledge of" a co-fiduciary's breach.  *See id.* at *13; *see also Donovan v. Cunningham*, 716 F.2d 1455, 1475 (5th Cir. 1983) ("Section 405 [1105] does not impose vicarious liability – it requires actual knowledge by the co-fiduciary. 'Under this rule, the fiduciary must know the other person is a fiduciary with respect to the plan, must know that he participated in the act that constituted a breach, and must know that it was a breach.'" (quoting H.R. Conf. Rep. No. 93-1280, 41 (1974), *reprinted in*, 1974 U.S.C.C.A.N. 5038, 5080)).  Plaintiffs' "knew or should have known" formulation simply does not appear in § 1105.[6]

---

[5] *See also Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 83-84 (1st Cir. 2001) (explaining that "[t]he *Diduck* rule was developed . . . as part of a federal common law right of action against non-fiduciaries . . . . It is readily apparent that *Diduck*'s constructive knowledge holding has not been considered, even by courts in the Second Circuit, to alter the actual knowledge standard applied in other contexts"); *Stutts v. De Dietrich Group*, No. 03-CV-4058, 2006 WL 1867060, at *13 n.21 (E.D.N.Y. June 30, 2006) ("The Court adopts the reasoning of other district courts in this circuit limiting *Diduck* to the context in which it arose.  The Second Circuit has since required actual knowledge to state a claim for participation in breach of fiduciary duty." (citing *SCS Commc'n v. Herrick Co., Inc.*, 360 F.3d 329, 342-43 (2d Cir.2004))).

[6] Moreover, *Diduck* has been abrogated even on the basis of its limited holding with respect to non-fiduciaries.  *See, e.g.*, *Haddock v. Nationwide Fin. Servs., Inc*. 570 F. Supp. 2d 355, 359 (D. Conn. 2008) (noting that "[i]n G*erosa v. Savasta & Co*., 329 F.3d 317, 322-23 (2d Cir. 2003), the Second Circuit recognized that *Mertens* squarely overruled its earlier holding in *Diduck* . . . which held that ERISA permitted implied claims for money damages against a non-fiduciary third-party that had participated in the fiduciary's breach of trust").  Moreover, in *Coan v. Kaufman*, 457 F.3d 250, 258 (2d Cir. 2006), the Second Circuit limited the holding of *Diduck* to cases "brought under ERISA § 502(g)(2) [29 U.S.C. § 1132(g)(2)]," as opposed to section 502(a)(2).  *Coan*, 457 F.3d at 258.

Not only is Plaintiffs' co-fiduciary liability argument legally incorrect and procedurally untenable, but Plaintiffs also do not allege any facts to support a claim under this standard. Plaintiffs fail to allege any plausible basis for their claim that State Street had actual (or even constructive) knowledge that CitiStreet was allegedly providing F.W. Webb with investment advice at all, let alone allegedly imprudent advice. *See Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58-59 (2d Cir. 2010) (holding that "'[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss'" (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009))). "Under *Iqbal*, factual allegations must be sufficient to support necessary legal conclusions." *Id*. at 59. Although Plaintiffs allege that State Street and CitiStreet were "affiliates," the parties' joint-venture corporate relationship provides no basis to plausibly infer any level of knowledge regarding CitiStreet's alleged extra-contractual, in-person client communications. Nowhere in its Motion or PFAC do Plaintiffs allege any facts suggesting how or why State Street could have acquired knowledge of what advice (if any) CitiStreet provided to F.W. Webb at client meetings, much less what CitiStreet may have omitted to provide. Accordingly, Plaintiffs' attempt to resurrect its co-fiduciary theory of liability against State Street fails.

## II. PLAINTIFFS PROVIDE NO BASIS FOR RECONSIDERATION OF THE COURT'S DISMISSAL OF THE STATE LAW CLAIMS AGAINST STATE STREET

### A. Plaintiffs' State Common Law And Chapter 93A Claims Against State Street Are Preempted By ERISA

The Court held that because State Street acted as an ERISA fiduciary prior to 2000, Plaintiffs' state common law and Chapter 93A claims were preempted. Op. at 29. Although Plaintiffs previously acknowledged that these claims could survive only if State Street was not found to be an ERISA fiduciary, *see* Op. at 29 (citing Pls.' Opp. to State Street's Motion to

Dismiss at 31), Plaintiffs now argue otherwise.  They assert in their Motion that if State Street failed to be an investment advice fiduciary after April 2000, then "its failure to correct earlier representations about the YPF would not relate to its core duties as directed trustee with respect to the plan," and therefore, Plaintiffs are "entitled to pursue [their] state law claims against State Street for fraud, negligence, negligent misrepresentation and violations of c. 93A."  Pls.' Mem. at 16.  Aside from being a new argument raised improperly on a motion for reconsideration, this argument finds no support in the law.

In its Opinion, the Court found that Plaintiffs failed to allege that State Street "owed plaintiffs any duty of care (apart from its duties as directed trustee) requiring affirmative disclosure of information to plaintiffs after that date."  Op. at 29 n.7.  Attempting to remedy this deficiency, Plaintiffs now contend that State Street's duty of disclosure stems from the common law duty to correct previous statements that have become false or misleading.  Pls.' Mem. at 16. The fatal flaw in Plaintiffs' argument, however, is that Plaintiffs still have not – and cannot – allege that State Street owed Plaintiffs any duty of care that did not stem from a duty under ERISA.

The ERISA preemption inquiry focuses on the subject matter of the alleged misconduct.[7] *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 703 (6th Cir. 2005) ("In reviewing whether ERISA preempts a state-law negligent misrepresentation claim, we have held that ERISA preemption does not turn on the timing of the alleged misrepresentation, but rather the true nature of the issues underlying the claim." (citation omitted)).  Prior to 2000,

---

[7] Section 502(a)(2) of ERISA allows plan participants, beneficiaries or fiduciaries to bring claims for appropriate relief under section 1109, which broadly imposes liability for any breach of fiduciary duties.  Section 514, in turn, preempts any state law that "provides an alternative enforcement mechanism to ERISA's civil enforcement provision, § 502."  *Darcangelo v. Verizon Commc'ns, Inc*., 292 F.3d 181, 194 (4th Cir. 2002).

State Street made representations about the YPF to F.W. Webb in its capacity as an ERISA fiduciary.  Plaintiffs base their state common law and Chapter 93A claims on State Street's failure to correct these representations about the YPF which Plaintiffs assert became misleading when the YPF's investment strategy allegedly changed.  Pls.' Mem. at 17.  Thus, because Plaintiffs' claims are based upon statements made by State Street when it was an ERISA fiduciary, these claims are preempted by ERISA.  The authorities cited by Plaintiffs are unavailing because these cases all involved an ERISA fiduciary's potential liability for acts *unrelated to ERISA duties*.  *See, e.g.*, *Darcangelo*, 292 F.3d at 193  (allowing state law claims to proceed where the alleged conduct of the fiduciaries "was entirely unrelated to and outside the scope of their duties under the plan"); *Penny*, 399 F.3d at 699-703 (holding that claims against plan trustee were preempted, but contract claims against non-fiduciary recordkeeper regarding alleged breach of duty to perform tax code compliance testing were not preempted); *Bank of Louisiana v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 243-45 (5th Cir. 2006) (holding that claims against defendant in its separate capacity as insurance vendor were not preempted because they were unrelated to defendant's role as plan administrator).  Accordingly, the Court's dismissal of Plaintiffs' state common law and Chapter 93A claims should stand.

**B.    Plaintiffs Have Not Stated A Claim Against State Street Under The Massachusetts Uniform Securities Act**

The Court dismissed Plaintiffs' claim under § 410(a)(2) of the Massachusetts Uniform Securities Act ("MSA") because Plaintiffs failed to allege that "State Street made any material misstatements or omissions about the YPF while providing investment advice to the Plan Committee."  Op. at 30.  Plaintiffs challenge this holding by arguing that the Court improperly limited its inquiry to statements State Street made "while providing investment advice," instead of focusing on State Street's purported failure to correct its 1996 description of the Yield Plus

Fund as a "money market fund."  Pls.' Mem. at 19-20.  As an initial matter, Plaintiffs already

submitted this argument to the Court, and the Court nonetheless dismissed Plaintiffs' § 410(a)(2)

claim.  Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss at 43; Op. at 30.  Plaintiffs' argument is

therefore improper on a motion for reconsideration because Plaintiffs identify no mistake of fact

or clear error of law by the Court.  *See EMI Entm't*, 681 F. Supp. 2d at 471 (holding that "a

motion for reconsideration 'is not a motion to reargue those issues already considered'" (citation

omitted)).

    Regardless, Plaintiffs' argument fails because they still do not allege that State Street's

description of the Fund was false when made.  In fact, Plaintiffs imply it was accurate, and

conceded as much at oral argument for State Street's Motion to Dismiss.[8]  PFAC ¶ 62

("[S]ometime in 2000 or 2001 . . . SSgA apparently abandoned the Yield Plus Fund's

conservative investment strategy . . . .").  Without a false statement State Street had a duty to

correct, Plaintiffs' § 410(a)(2) claim cannot survive.  *See Marram v. Kobrick Offshore Fund,*

*Ltd.*, 809 N.E.2d 1017, 1025-26 (Mass. 2004) (holding that an untrue statement is a necessary

element of § 410(a)(2) claims and noting that Massachusetts courts look to federal decisions

under the "almost identical" § 12(a)(2) of the 1993 Act in interpreting § 410(a)(2)); *see also In re*

*Britannia Bulk Holdings Inc. Sec. Litig*, 665 F. Supp. 2d 404, 418 (S.D.N.Y. 2009) (dismissing

---

[8] At oral argument Plaintiffs were asked:

| | |
|---|---|
| THE COURT: | . . . let me ask you for a clarification, whether my understanding is correct that the complaint doesn't actually allege any misstatements or  breaches of fiduciary duty with respect to the advice given in 1996. |
| MR. LURIE: | You are correct.  We have believe it is an omission.  As far as we know it was as stable as a money market fund in 1996 and things changed and they didn't tell us. |
| THE COURT: | So some breach occurred in 2000 or 2001? |
| MR. LURIE: | Yes. |

Oral Argument Tr. 35:14-23 (April 26, 2010).

analogous claim under § 12(a)(2) of the 1933 Act when defendant's prior statements in offering documents were not materially misleading when made).  Plaintiffs cite no authority to support their apparent position that State Street, as a directed trustee after April of 2000, had a perpetual duty to correct Plaintiffs' alleged misimpressions about their investments.

Furthermore, Plaintiffs offer nothing to explain how State Street's alleged omission was material, given that the public prospectus for the Yield Plus Fund repeatedly and unambiguously stated that the Fund was "not a money market fund."  Absent such allegations, Plaintiffs' argument fails as a matter of law.  *See Adams v. Hyannis Harborview, Inc.*, 838 F. Supp. 676, 687 (D. Mass. 1993) (holding that alleged omissions must be "likely to be viewed by a reasonable investor as significantly altering the total mix of available information").

### III.  PLAINTIFFS' PROPOSED NEW FACTUAL ALLEGATIONS PROVIDE NO BASIS FOR GRANTING LEAVE TO AMEND BECAUSE AMENDMENT WOULD BE FUTILE

Plaintiffs seek leave to file an amended complaint, arguing that they have added new allegations and purportedly "newly-discovered evidence" to "add information and specificity that the Court found was lacking" in Plaintiffs' original complaint.  Pls.' Mem. at 25.  The thrust of Plaintiffs' new allegations relate to several vicarious liability theories attempting to hold State Street liable for CitiStreet's alleged post-April 2000 breaches of fiduciary duty.  *See, e.g.*, PFAC ¶¶ 92-93 (alleging that State Street provided F.W. Webb investment advice after April 2000 directly or indirectly through its affiliate, CitiStreet); PFAC ¶¶ 47, 50, 51, 66, 116 (alleging that CitiStreet acted as an agent for State Street in providing investment advice for F.W. Webb).  But all of these theories of vicarious liability fail as a matter of law, and thus Plaintiffs' request for leave to amend should be denied as futile.  The Second Circuit has repeatedly held that futility is a "good reason" to deny a plaintiff leave to amend under Rule 15.  *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 272 (2d Cir. 1996) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir.

1995)). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente*, 310 F.3d at 258 (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).  Although Plaintiffs' discussion of its agency-related theory is confined to just one footnote in their Motion, *see* Pls.' Mem. at 10 n.7, State Street addresses the failure of this theory of liability so as to firmly establish the futility of Plaintiffs' PFAC.[9]

### A.   ERISA Does Not Permit Plaintiffs To Pursue Vicarious Liability Against A Principal For Breach Of An ERISA Fiduciary Duty By An Agent

Plaintiffs improperly seek to inject common law agency theories of liability into ERISA's already comprehensive liability scheme.  Notwithstanding the PFAC's repeated assertions that CitiStreet acted as State Street's "agent," *see, e.g.*, PFAC  ¶¶ 47, 50-51, 66, Plaintiffs identify no Second Circuit authority in support of applying common law agency principles to impose vicarious ERISA liability.  Where two defendants serve a plan in fiduciary roles, Second Circuit courts assess joint liability claims under § 1105 co-fiduciary standards and have held that superimposing common law agency principles on that scheme would undermine ERISA:

> In ERISA co-fiduciary cases, an agent's knowledge cannot be imputed to the principal.  As stated, *respondeat superior* liability is incongruent with ERISA's fiduciary liability scheme.  *See In re AOL Time Warner*, 2005 WL 563166, at *4 n. 5.  To allow knowledge to be imputed pursuant to traditional agency theory would likewise circumvent this scheme by imposing virtually strict liability on principals for breaches of their agents, thus extending co-fiduciary liability beyond the strictly-delimited categories of 29 U.S.C. § 1105(a).

---

[9] Plaintiffs argued in opposition to State Street's Motion to Dismiss that "State Street remained legally responsible for CitiStreet's post-2000 conduct whether CitiStreet acted as a subcontractor or its agent."  Pls.' Mem. at 4 (citing Pls.' Mem. in Opp. to Defs.' Motions to Dismiss at 24; Pls.' Sur-Reply Mem. at 24-25 n. 14).  But the Court held that Plaintiffs' agency argument was "unpersuasive" because while Plaintiffs "briefly [argued] that State Street [was] liable for CitiStreet's breaches under agency principles," Plaintiffs' Complaint failed  to "allege the existence of a principal-agent relationship between State Street and CitiStreet, which would require that [State Street] controlled [CitiStreet] in its performance of services for [F.W. Webb]."  Op. at 25 n.6 (citations omitted).

*Harris v. Finch, Pruyn & Co., Inc*., No. 1:05-CV-951, 2008 WL 2064972, at *8 (N.D.N.Y. May 13, 2008) (declining to impute an alleged fiduciary agent's knowledge to hold a principal liable as a co-fiduciary).  Courts have held that there is no room in ERISA's statutory scheme for vicarious claims against third parties.  *See, e.g., In re AOL Time Warner*, No. MDL 1500, 02 Civ. 8853, 2005 WL 563166, at *4 n.5 (March 10, 2005) ("[T]here is no reason to recognize an implied ERISA cause of action under the doctrine of *respondeat superior* . . . since the statute's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." (citations and internal quotation marks omitted)); *In re Bank of Am. Corp. Litig.*, No. 09 MD 2058, 2010 WL 3448197, at *13 (S.D.N.Y. Aug. 27, 2010) ("[S]everal district courts in this circuit have declined to apply *respondeat superior* in the ERISA context as an independent theory of liability . . . ."); *In re Morgan Stanley ERISA Litig*., 696 F. Supp. 2d. 345, 355 (S.D.N.Y.2009) (same).[10] Whether liability is framed as a question of *respondeat superior* or agency, the result is the same: there is no room in ERISA's comprehensive statutory scheme for common law liability principles.  *See, e.g.*, *In re Bank of Am.*, 2010 WL 3448197 at *13 (finding infirm claims of both agency and *respondeat superior* liability); *see also DiFelice v. U.S. Airways, Inc*., 397 F. Supp. 2d 758, 780 (E.D. Va. 2005) ("Because ERISA § 405(c) directly addresses the liability of a

---

[10] Recently, in *In re Bank of Am. Corp. Litig.*, 2010 WL 3448197, at *13 (S.D.N.Y. 2010), the court acknowledged a circuit split on the viability of *respondeat superior* claims under ERISA, and stated that although the Second Circuit had not weighed in on the question, district courts within the Second Circuit have declined to apply *respondeat superior* in the ERISA context. Although many cases addressing *respondeat superior* liability under ERISA do so in the context of a non-fiduciary employer entity, the same reasoning applies here, where State Street was not a fiduciary for purposes of providing investment advice.  Given State Street's role as a directed trustee fiduciary, § 1105 is the appropriate provision covering liability among co-fiduciaries. However, as set forth in Section I.B.2, *supra*, Plaintiffs have failed to state a claim against State Street under § 1105.

fiduciary for the breaches of its delegates, it has therefore supplanted traditional agency principles in this specific context.").  Because Plaintiffs' attempt to hold State Street liable for the duties of a supposed agent's breach of an ERISA fiduciary duty fails as a matter of law, asserting such claims in the PFAC is futile and Plaintiffs' request for leave to amend should be denied.  *See Lucente*, 310 F.3d at 258.

> **B.    Plaintiffs Insufficiently Plead In The PFAC That CitiStreet Was State Street's Agent**

Even if State Street could be held liable under an agency/vicarious liability theory, Plaintiffs' allegations in the PFAC fail to plead adequately that CitiStreet acted as State Street's agent.  Plaintiffs allege in the PFAC that CitiStreet acted as State Street's "subcontractor and agent" in providing investment advice to F.W. Webb.  *See, e.g*., PFAC ¶ 51.  Critical to establishing a principal-agent relationship is demonstrating that the principal had control over the alleged agent.  *See In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 607 (S.D.N.Y. 2005); Restatement (Third) of Agency § 1.01.  Here, Plaintiffs conclusorily allege that State Street "controlled" CitiStreet within the context of an agency relationship, *see* PFAC ¶¶ 41, 47, 51-52, but none of Plaintiffs' new allegations or "newly-discovered" evidence support the allegation that State Street exercised control over CitiStreet in its provision of purported investment advice or administrative services to F.W. Webb.  Plaintiffs' arguments regarding the definition of control in the Investment Company Act of 1940 (the "40 Act") and the term "control" within the CSA's definition of "Affiliates of CitiStreet" are inapposite.  PFAC ¶¶ 41, 51-52.  The '40 Act's definition of "control" applies only to unrelated issues such as determining whether an unregistered investment company is controlling a buyer or seller of securities, 15 U.S.C. § 80a-7(a) (2010), preventing a complex cascading structure of investment companies owning each other (known as "pyramiding"), 15 U.S.C. § 80a-12(d) (2010), and prohibiting certain

transactions, 15 U.S.C. § 80a-17 (2010).  Likewise, the term "control" in the CSA arises in the

context of corporate affiliation, CSA at 2-3, and is irrelevant to establishing agency.  *See, e.g.,*

*Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 421 (S.D.N.Y. 2007)

(holding that stock ownership or corporate control, in and of itself, cannot establish vicarious

liability).  Moreover, the CSA specifically provided that CitiStreet had no power to bind State

Street, CSA at 14, which is another important indicator of an agency relationship.  *See, e.g.*, *Id.*

at 422.

### C.   Any Provision Of Investment Advice By CitiStreet Would Fall Outside The Scope Of Any Agency

Even assuming *arguendo* that CitiStreet was State Street's agent, CitiStreet's alleged

provision of extra-contractual investment advice would fall outside the scope of any agency.

Therefore, State Street cannot be held liable for any alleged breach of fiduciary duty by

CitiStreet in its advisory role.  *See In re Parmalat Sec. Litig.*, 640 F. Supp. 2d 243, 249-50

(S.D.N.Y. 2009) ("For centuries, the principal has been liable for the torts, including the

intentional torts, of its agent as long as the agent acted within the scope of its employment.");

*Theos & Sons v Mack Trucks, Inc.*, 729 N.E.2d 1113, at 1120 (Mass. 2000) ("Even where an

agent-principal relationship exists, however, the principal has liability for the agent's act toward

third parties only if the agent was acting with the actual or apparent authority of the principal in

that transaction."); *see also* Restatement (Third) Agency §§ 7.07 & 7.08 (2006) (stating that

vicarious liability is appropriate only where an employee acts within scope of employment, or

where an agent acts within its "apparent authority").[11]  Both the CSA and the CitiStreet Letter

---

[11] Plaintiffs' PFAC does not allege that CitiStreet had apparent authority to act on behalf of State Street with respect to the provision of investment advice.  *See* Restatement (Third) Agency § 2.03 (2006) (stating that apparent authority exists "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations"); Restatement (Third) of Agency § 7.08.  Although Plaintiffs allege in the PFAC

emphasized that CitiStreet's duties were limited to the scope of State Street's previous contractual duties under the ASA, and the ASA contained no provision for investment advice.[12] As the Court correctly observed, any provision of investment advice by CitiStreet was "free-standing" and "non-contractual." Op. at 25.

Accordingly, because Plaintiffs' new allegations and "newly-discovered" evidence present no claims capable of withstanding a motion to dismiss, Plaintiffs' request for leave to amend should be denied. *See, e.g., Lucente*, 310 F.3d at 258.

---

that they "relied" upon the CitiStreet Letter in "believing that State Street Bank would continue to be ultimately responsible . . . for the investment advice that would not [sic] be provided through and together with their affiliate, CitiStreet," PFAC ¶39, the CitiStreet Letter provides no foundation for this assertion because as discussed, neither it, the CSA nor the ASA contained any provision for investment advice.

[12] The CSA stated that CitiStreet was to "perform State Street's obligations to the Clients as set forth in such Client's Client Agreement, subject to the terms and conditions of this Agreement." CSA at 4. Additional services provided were to be limited to those "required to enable State Street to carry out its obligations to the Clients under any Client Agreement." *Id*. State Street's liability as Prime Contractor is limited to "State Street's obligations under the applicable Client Agreement," *Id*. at 6, and there was no power provided to CitiStreet to bind State Street outside the scope of agreements in place. *Id*. at 14. Similarly, the CitiStreet Letter explicitly stated that CitiStreet was to assume duties pursuant to "agreements currently in place." CitiStreet Letter at 2. There was no provision for investment advice in either the CSA or the CitiStreet Letter.

## <u>CONCLUSION</u>

For the reasons provided above, State Street respectfully requests that the Court deny

Plaintiffs' Motion for Reconsideration and for Leave to File First Amended Complaint.


Dated:  October 8, 2010                                   Respectfully submitted,

                                                          ROPES & GRAY LLP


                                                          By: <u>/s/ Harvey J. Wolkoff</u>
                                                          Harvey J. Wolkoff
                                                          Robert A. Skinner
                                                          One International Place
                                                          Boston, Massachusetts 02110
                                                          (617) 951-7000
                                                          harvey.wolkoff@ropesgray.com
                                                          robert.skinner@ropesgray.com


                                                          *Attorneys for Defendants State Street Bank and*
                                                          *Trust Company and State Street Global Advisors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2010, I caused a true and correct copy of the foregoing document to be served upon all counsel of record via the ECF system.

<u>/s/ Allison M. Boscarine</u>
Allison M. Boscarine